S. Samuel Di Palco, S.
This is an application by a successor executrix for an order setting aside a transfer of stock heretofore made by the now deceased executor to himself individually. *502 The deceased executor and the decedent were husband and wife. They resided in a co-operative apartment, each being the record owner of 4% shares of the capital stock of the corporation which owned the realty. The decedent’s will created a marital deduction trust for the benefit of her husband, income being payable to him during his lifetime, with full power to appoint the corpus in his will. It named him as executor.
The decedent died on January 21, 1959. On December 11, 1963, the executor transferred the decedent’s 4% shares to himself, and on December 12, 1963 the corporation canceled the old certificates and issued to him a new certificate for 8% shares. The executor paid into the estate the sum of $7,500 as consideration for the transfer of the 4% shares to him. It is the contention of the successor executrix that the value of the 4% shares was greatly in excess of the sum of $7,500. A real estate broker testified that in December, 1963, in his opinion, the value of the 8% shares was approximately $30,000. That valuation is contested by the husband’s estate.
The deceased executor left a will under which he bequeathed a life interest in the co-operative apartment and in the proprietary lease to a named beneficiary, the remainder passing to named relatives. The life beneficiary contends that the entire 8% shares were in reality purchased by the husband and that one half of the shares were placed in the name of his wife only for convenience and for tax purposes. She contends that in the estate tax proceedings in this estate the now deceased executor had asserted his ownership of all of the shares and that the estate tax was assessed on the basis of ownership of the shares by the husband, not by the decedent. The basis upon which estate taxes are assessed does not conclusively determine rights and interests in property. In some instances the estate may be estopped by representations made in the tax proceeding. Here, however, the executor made representations for his own individual benefit and although the result was favorable from a tax standpoint, it cannot enure to the personal benefit of the executor and against the interests of other beneficiaries.
A principle of estate and trust administration which is strictly enforced by the courts is that the fiduciary owes undivided loyalty to the beneficiaries and creditors and he cannot place himself in a position where he has personal interests to serve that are in conflict with estate interests. (City Bank Farmers Trust Co. v. Cannon, 291 N. Y. 125, 131 et seq.; Matter of Durston, 297 N. Y. 64, 71-72; Matter of People [Bond & *503 Mtge. Guar. Co.], 303 N. Y. 423, 430.) Whenever the fiduciary has a personal or “ selfish interest which may be served, the law does not stop to inquire whether the [fiduciary’s] action or failure to act has been unfairly influenced. It stops the inquiry when the relation is disclosed and sets aside the transaction or refuses to enforce it”. (City Bank Farmers Trust Co. v. Cannon, supra, p. 132.)
A fiduciary may not sell his own property to the estate or purchase from himself estate property without first obtaining permission from the court. In a leading case in this State (Davoue v. Fanning, 2 Johns. Ch. 252) Chancellor Kent said (p. 257): “The case, therefore, falls clearly within the spirit of the principle, that if a trustee, acting for others, sells an estate, and becomes himself interested in the purchase, the cestui que trust is entitled to come here, as of course, and set aside that purchase, and have the property re-exposed for sale ”. Again, after an extensive review of the cases, the Chancellor said (pp. 260-261): “However innocent the purchase may be in the given case, it is poisonous in its consequences. The cestui que trust is not bound to prove, nor is the Court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power, distinctly and clearly, to show it. There may be fraud, as Lord HardwicJce observed, and the party not able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the cestui que trust to come, at his own option, and without showing actual injury, and insist upon having the experiment of another sale. This is a remedy which goes deep, and touches the very root of the evil. It is one which appears to me, from the cases which have been already cited, and from those which are to follow, to be most conclusively established.”
The same principle was announced in a decision of the Supreme Court of the United 'States in Michoud v. Girod (4 How. [45 U. S.] 503, 554-555). It is a rule that is generally recognized and applied. (Restatement, Trusts, §§ 170, 206; 2 Scott, Trusts [2d ed.], § 170.1.) The beneficiaries are not required to establish that the price paid by the fiduciary was unfair. They may compel the fiduciary to offer the property for sale so that ready and willing buyers may bid freely for it.
The application of the successor executrix is granted, the sale of the 4% shares must be set aside, and the estate revested with title to such 4% shares. It is not necessary to decide at this time how such property shall finally be distributed.